UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NORMAN PAUL TRAHAN                                        CIVIL ACTION

VERSUS                                                   NUMBER: 14-1068

FEDERAL BUREAU OF                                        SECTION: "J"(5)
INVESTIGATION; ET AL.

## REPORT AND RECOMMENDATION

Employing the standardized form that is provided to state prisoners for filing suit pursuant to the U.S.C. §1983, the above-captioned matter was filed *in forma pauperis* ("IFP") by *pro se* Plaintiff, Normal Paul Trahan, against Defendants, the Federal Bureau of Investigation ("FBI"), the United States Secret Service ("Secret Service"), the Drug Enforcement Administration ("DEA"), the New Orleans Police Department ("NOPD"), the Orleans Parish Sheriff's Office ("OPSO"), the Orleans Parish Public Defender's Office, the Terrebonne Parish Sheriff's Office ("TPSO"), the Orleans Parish Clerk of Court,[1] the Orleans Parish District Attorney's Office, and the U.S. Attorney's Office for the Eastern District of Louisiana. (Rec. doc. 1, pp. 1, 5, 6).

---

[1] This entity is further identified as the Orleans Parish Criminal Clerk of Court elsewhere in Plaintiff's complaint. (Rec. doc. 1, p. 6). As Plaintiff's complaint contains no mention of any dealings with the Orleans Parish Civil District Court Clerk's Office, the Court believes that there is but one Clerk of Court entity as a defendant in this matter.

Plaintiff is an inmate of the Orleans Parish Prison ("OPP") who is being held on charges of unauthorized entry of an inhabited dwelling and violation of a protective order in the Criminal District Court for the Parish of Orleans.  Plaintiff alleges that in January of 2014, he began providing the FBI, through Special Agent ("SA") Ron Reed, with information indicating that several individuals had been involved in a wide variety of crimes including fraud, racketeering, counterfeiting, drug trafficking, and internet prostitution, the focal point of his allegations being an attorney and his former employer, Cameron Nicolas Ehsani-Landry.  In connection with the provision of that information, Trahan alleges that he requested to be designated a confidential information so that he would be provided protection, immunity, and compensation for himself and his daughter, Brittany Angelle Trahan, who was "directly involved."  Ultimately, SA Reed informed Plaintiff that the FBI was declining to investigate his allegations and referred him to the Secret Service or the DEA.

Pursuant to that referral, Trahan alleges that he then contacted the Secret Service and provided its SA with the same information he had provided SA Reed with a special emphasis on the Iranian counterfeiting of U.S. currency and securities.  Like the FBI, the Secret Service deferred action and referred Plaintiff to the DEA.  Trahan next alleges that he provided information to the TPSO that was needed to arrest its "most wanted," Dominic Dantoni, who was a client and associate of Ehsani-Landry.  Two days later, Plaintiff states that Ehsani-Landry fled to Iran ". . . apparently to escape possible arrest for his dealings in the synthetic drug trade."

At some point, Trahan indicates that he contacted the DEA directly and was referred from one agent to another who all failed to return his phone calls or emails on the subject. A message that was directed to one of those DEA agents through a social media site was allegedly met with the threat of Plaintiff's arrest. Acting on the advice of another attorney, Trahan attempted to make appointments with the U.S. Attorney's Office and the DEA to prompt some action, all to no avail.

In the meantime, arrangements had been made for Plaintiff to stay at the residence of his daughter, an employee of Ehsani-Landry who had previously obtained a restraining order against Plaintiff, while Plaintiff was in New Orleans to attend proceedings that were pending in another section of this court. That residence was apparently contained within a building housing the law offices of Ehsani-Landry which he owned and which Plaintiff describes as the "headquarters" of illegal activity. While there, Trahan alleges that he recorded hours of presumably illegal activities on his iPhone and laptop computer and acquired other pieces of evidence supporting his allegations of wrongdoing, including the serial numbers on various pieces of high priced stolen merchandise that Ehsani-Landry had reportedly purchased from local "crackheads" for pennies on the dollar. Additional incriminating evidence included packaging from synthetic drugs that had been mailed from China to the law office. Much of this information was forwarded on to the DEA and the TPSO as it was obtained.

Once back at home in Houma, Plaintiff began downloading the information that he had obtained on his own electronic equipment. He then emailed a number of individuals, including his daughter and other associates of Ehsani-Landry, and advised them that he

3

was reporting the illegal activities to the Bar Association.  That initially resulted in Plaintiff receiving numerous threats via various communication mediums.  Undaunted, Plaintiff lodged his complaint with the Bar Association as well as an EEOC charge against his former employer, Ehsani-Landry.   In retaliation, Plaintiff alleges that his daughter and another associate of Ehsani-Landry then filed "bogus charges" against him which resulted in his arrest by the NOPD despite a wealth of evidence that proves his innocence.  Subsequent to his arrest, Trahan states that he was appointed an attorney whom he has never seen. Plaintiff further alleges that ". . . if the FBI, DEA, and rest of the Defendants would have done their jobs he wouldn't be incarcerated and the guilty wouldn't be running the streets of Iran."  Motions that  he has submitted to the Orleans Parish Clerk of Court go unanswered, as do letters requesting assistance from the Orleans Parish District Attorney's Office, and the TPSO has in its possession a computer and two cell phones that Trahan needs to prove his case.  For his false arrest/imprisonment and the failure of the Defendants to properly investigate his allegations of wrongdoing, Plaintiff seeks two hundred fifty thousand dollars in damages.  He also requests that his computer and cell phones be released by the TPSO to the Commissioner of the Orleans Parish Criminal District Court and that he be freed from custody.  (Rec. doc. 1).

Initially, the Court is required to examine plaintiff's complaint to determine whether the allegations presented therein, if proven, would undermine the constitutional validity of his state court conviction or confinement.  When a state prisoner attacks the very fact or length of his confinement, the appropriate cause of action is a petition for writ of habeas corpus even though the facts of the complaint might otherwise be sufficient to state a claim

4

under 42 U.S.C. §1983.  *Caldwell v. Line*, 676 F.2d 494 (5th Cir. 1982); *Richardson v. Fleming*, 651 F.2d 366 (5th Cir. 1981); *Johnson v. Hardy*, 601 F.2d 172 (5th Cir. 1979).  Where the exclusive initial remedy is for habeas corpus relief, exhaustion of state court remedies is required, a requirement that applies to both pre-trial and post-conviction habeas proceedings.  *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198 (1982); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827 (1973); *Dickerson v. State of Louisiana*, 816 F.2d 220, 225 (5th Cir.), *cert. denied*, 484 U.S. 956, 108 S.Ct. 352 (1987).  The exhaustion requirement is satisfied only where a prisoner's grounds for federal habeas corpus relief were previously presented to the state's highest court in a procedurally proper fashion.  *Knox v. Butler*, 884 F.2d 849, 852 n.7 (5th Cir. 1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1828 (1990); *Dupuy v. Butler*, 827 F.2d 699, 702 (5th Cir. 1988).

Plaintiff alleges that his complaints of wrongdoing by Ehsani-Landry and his associates were not investigated to his satisfaction by the named Defendants.  He also alleges that he was wrongfully arrested by the NOPD based solely on the allegations of complaining parties and without any independent investigation being conducted, that he has not been provided with effective assistance of counsel, and that motions that he has filed in his criminal case have been ignored.  The latter set of allegations clearly challenge the fact and duration of Trahan's confinement which must initially be pursued on habeas corpus grounds, but only after he has exhausted available state court remedies.  *Hernandez v. Spencer*, 780 F.2d 504, 505 (5th Cri. 1986).  In that regard, Plaintiff indicates on the face of his compliant, in answer to Question No. I(A) of the pre-printed §1983 complaint form, that he has not initiated any other lawsuits in state or federal court dealing with the same facts

that are involved herein or otherwise relating to his imprisonment.   (Rec. doc. 1, p. 1).

Accordingly, insofar as the instant matter can be construed as a request for habeas corpus

relief it should be dismissed without prejudice for failure to exhaust available state court

remedies.  *McGrew v. Texas Board of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995).

The Court must next determine whether any valid §1983 claims are raised by

Plaintiff's complaint.   For the reasons that follow, the Court answers that question in the

negative.   As to Defendants, the FBI, Secret Service, DEA, and the U.S. Attorney's Office,

Plaintiff's complaint fails to state a claim under §1983 as those are federal entities acting

under federal law and not state actors acting under color of state law as that civil rights

statute requires.   *Lyons v. Sheetz*, 834 F.2d 493, 495 (5th Cir. 1987).   In a similar vein,

neither police departments of cities like the NOPD, *Melancon v. New Orleans Police Dept.*,

No. 08-CV-5005, 2009 WL 249741 at *1-2 (E.D. La. Jan. 30, 2009), nor sheriff's offices of

parishes like the OPSO and TPSO are considered to be "persons" within the meaning of

§1983.   *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp.2d 545, 548 (E.D. La. 2009).   The

same reasoning applies with respect to any purported §1983 claims against the Orleans

Parish Public Defender's Office.   *Foster v. Orleans Parish Public Defender's Office*, No. 10-CV-

4563, 2011 WL 446031 at *2 (E.D. La. Jan. 3, 2011), *adopted*, 2011 WL 445957 (E.D. La. Feb.

4, 2011)(citing *Fondol v. Orleans Parish District Attorney's Office*, No. 08-CV-4158, 2008 WL

4891238 at *2 (E.D. La. Nov. 4, 2008)).   Common to all of the Defendants are Plaintiff's

allegations that they failed to investigate his complaints of wrongdoing to his satisfaction.

Private citizens, however, have no constitutional right to have their complaints

investigated, to their satisfaction or otherwise, by federal or local executive officials.  *Lovoi*

*v. Federal Bureau of Investigation*, No. 99-CV-3563, 2000 WL 33671769 at *2 n.4 (E.D. La. March 31, 2000).   Moreover, unless and until Plaintiff is able to have his present confinement declared invalid by a tribunal that is authorized to make such a determination, he has no §1983 cause of action.  *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364 (1994). For all these reasons, it will be recommended that Plaintiff's §1983 claims be dismissed with prejudice under 28 U.S.C. §1915(e)(2)(B)(ii).  *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

On June 12, 2014, Plaintiff filed a motion to amend his complaint to additionally raise claims under the Whistleblower Protection Act ("WPA"), which he cites as 5 U.S.C. §1211, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671-2680.  At this stage of the proceedings, leave of court for Plaintiff to amend his complaint is not required.  *See* Rule 15(a)(1), Fed.R.Civ.P.  However, just like his purported §1983 claims, the claims sought to be added via the proposed amendment fail to state a claim upon which relief can be granted and should also be dismissed under §1915(e)(2)(B)(ii).  The incorrectness of Plaintiff's cite to 5 U.S.C. §1211 notwithstanding,[2/] no claim under the WPA lies here because he does not allege that he was an employee of the federal government who was covered by the terms of the WPA.  *Stern v. Epps*, 464 Fed.Appx. 388, 392 (5th Cir. 2012). Similarly, as Plaintiff makes no showing of having exhausted administrative remedies with respect any claims arising under the FTCA, no such claims are tenable here.  *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222-23 (5th Cir. 1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct.

---

[2/] Title 5 U.S.C. §1211, entitled "Establishment," provides for the creation and term of the Office of Special Counsel.

1141 (1990).  For these reasons, Plaintiff's claims under the WPA and the FTCA should thus be dismissed.

Finally, the Court turns to two other motions that were filed by Plaintiff that remain pending in this case.  The first of those, Plaintiff's "Emergency Motion for Docket Number and *In Forma Paupas* (sic)," is moot as this case was duly given a docket number at the time that it was allotted and Plaintiff's application to proceed IFP was granted on May 4, 2014. (Rec. doc. 3).  The second motion that remains pending is Plaintiff's "Motion and Order to File Case Under Seal" which he submitted contemporaneously with his original complaint. (Rec. doc. 4).[3/]   The stated reasons for that request are to avoid:   1) jeopardizing investigations into the wrongdoing that he complained of to the named Defendants and 2) placing Plaintiff and his family members in danger.  (*Id.*).

In determining whether to seal a judicial record, the Court must balance the public's common law right of access against interests favoring non-disclosure.  *Jaufre v. Taylor*, 351 F. Supp.2d 514, 515 (E.D. La. 2005)(citing *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993)).  Although the common law right to public access is not absolute, it does serve important interests such as the promotion of trustworthiness in the judicial process, the reduction of judicial abuses, and to provide the public with a more complete understanding of the judicial system.  *Id.*  "Public concerns are especially significant when considering whether to prevent disclosure of litigation matters that involve a government party."  *Beckett v. Serpas*, No. 12-CV-0910, 2013 WL 6502847 at *3 (E.D. La. Dec. 11, 2013).

---

[3/] Given its contemporaneous submission, out of an abundance of caution the Clerk of Court sealed the record of this case since its inception.

A party seeking to overcome the presumption of access bears the burden of showing that the interest in secrecy outweighs the presumption. *Jaufre*, 351 F.Supp.2d at 515. "The decision as to access is left to the discretion of the trial court but any doubt must be construed in favor of disclosure." *Id.* (citations omitted).

With the foregoing standards in mind, the Court finds unpersuasive Plaintiff's first stated reason for sealing the record in this case as it is largely at odds with the allegations set forth in his compliant that law enforcement officials have not acted on his complaints of wrongdoing. The second stated reason is also insufficient to overcome the presumption of disclosure given the situs of Plaintiff's housing, the fact that the central figure in his complaints of wrongdoing has, by his own admission, left the country, and that Plaintiff's daughter apparently has interests that are adverse to his own. For these reasons, it will be recommended that Plaintiff's motion to seal be denied and that the record of this proceeding be unsealed.

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that Plaintiff's complaint, insofar as it can be construed as a request for habeas corpus relief, be dismissed without prejudice for failure to exhaust available court remedies.

IT IS FURTHER RECOMMENDED that Plaintiff's claims under §1983, the WPA, and the FTCA be dismissed with prejudice under 28 U.S.C. §1915(e)(2)(B)(ii).

IT IS FURTHER RECOMMENDED that Plaintiff's motion for docket number (rec. doc. 5) be dismissed as moot, that his motion to seal (rec. doc. 4) be denied, and that the record of this proceeding be unsealed.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 20th day of _____ June _____, 2014.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE